UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KANAT UMARBAEV, | § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:20-CV-1279-B-BN |
| MARC J. MOORE, ET AL, | § § | (Consolidated with: 3:20-CV-1291-B-BN; 3:20-CV-1292-B-BN; 3:20-CV-1293-B-BN; |
| Respondents. | § § § § § | 3:20-CV-1294-B-BN; 3:20-CV-1295-B-BN; 3:20-CV-1296-B-BN; 3:20-CV-1297-B-BN; 3:20-CV-1298-B-BN; 3:20-CV-1299-B-BN; and 3:20-CV-1300-B-BN) |

## MEMORANDUM OPINION AND ORDER

Through counsel, eleven immigration detainees initially filed a consolidated habeas application under 28 U.S.C. § 2241, requesting expedited declaratory and injunctive relief, including a temporary restraining order ("TRO"), based on the assertion that, considering the COVID-19 global pandemic, their continued detention violates the right to due process under the Fifth Amendment. *See* Dkt. Nos. 1, 3, & 5. In sum, based on conditions that they allege are unconstitutional, Petitioners assert that they should be immediately released.

Their cases were severed—one for each habeas applicant—and then consolidated for pretrial management. *See* Dkt. Nos. 9 & 18. As ordered, *see* Dkt. No. 9, the United States Attorney for this district, on behalf of respondents, filed an expedited consolidated response, *see* Dkt. Nos. 14 & 15. Three detainees—Petitioners Alfredo Hechavarria Fonteboa, Behzad Jalili, and Osita Nwolisi—were released from detention and voluntarily dismissed their claims, *see* Dkt. No. 20 & 27, and the petitioners still in detention filed a consolidated reply, *see* Dkt. No. 22, 23, 26 & 32. The Court held oral argument telephonically on June 4, 2020. *See* Dkt. Nos. 25 & 33.

"To obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction," and "[t]he same four-factor test for preliminary injunctions also has been extended to temporary restraining orders," because "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (citations and internal quotation marks omitted). To obtain either, an applicant must "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

This is a "difficult" and "stringent" standard for movants to meet, as they bear "the burden of establishing each element." *Whitaker v. Livingston*, 732 F.3d 465, 469 (5th Cir. 2013); *Janvey v. Alguire*, 647 F.3d 585, 591, 595 (5th Cir. 2011). The United States Court of Appeals for the Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield*, 577 F.3d at 253 (internal quotation marks omitted). And "[t]he failure of a movant to establish one of the above four elements will result in the denial of a motion for temporary injunction." *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989).

Here, because Petitioners have not shown a substantial likelihood that they will prevail on the merits—that is, they have not shown the Court that habeas relief under Section 2241 is available based on the theories that they advance or that they may obtain the injunctive relief that they seek

(their release from immigration detention) directly under the Fifth Amendment or in equity—the Court must **DENY** the motion for TRO and, for the same reasons, must also **DENY** their requests for release and **DISMISS** this action.

"Petitioners bring this Writ of Habeas Corpus to secure their release from [ ] unconstitutional detention," asserting that they "are medically vulnerable individuals who are being held at Prairieland," "[e]ach of them has already tested positive for COVID-19 or faces a high risk of dying or becoming seriously ill if they do become infected," and, "[d]espite the ongoing outbreak and the dire circumstances on the ground, Respondents have failed to take the steps necessary to ensure that Petitioners are held in even minimally constitutionally sufficient conditions." Dkt. No. 1 at 2.

Petitioners do not therefore challenge the legal authority under which they are detained. That is, the fact that they are in custody is lawful. But, they argue, the conditions of their custody are not. And they urge the Court to "join the other courts from 'across the county' that have granted habeas and injunctive relief" by ordering "Petitioners' immediate release because their continued detention violates the Fifth Amendment's Due Process Clause." Dkt. No. 1 at 3.

At least two district courts in this circuit have done so, at least in part, by granting release to some (but not all) immigration detainees seeking relief under Section 2241. *See Vazquez Barrera v. Wolf*, ___ F. Supp. 3d ____, No. 4:20-CV-1241, 2020 WL 1904497 (S.D. Tex. Apr. 17, 2020); *Dada v. Witte*, No. 1:20-CV-00458, 2020 WL 2614616, at *1 (W.D. La. May 22, 2020). But at least one other district court in this circuit has found that Section 2241 does not allow an immigration detainee to seek release based on a challenge to the conditions of his conditions under the Due Process Clause. *See Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1815691, at *3-*6 (S.D. Tex. Apr. 9, 2020).

And, late last month, in an analogous context—state pretrial detainees—another judge of this Court agreed. *See Sanchez v. Brown*, No. 3:20-cv-832-E, 2020 WL 2615931, at *12 (N.D. Tex. May 22, 2020) ("[H]abeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody, and it cannot be used properly for any other purpose. An inmate is not entitled to relief in a habeas corpus petition based on civil rights claims related to the conditions of his confinement. Plaintiffs do not challenge the cause of their detention or contend that they are being held for an improper duration. They seek release due to the conditions at the jail caused by COVID-19. The Court concludes it lacks jurisdiction over Plaintiffs' habeas action." (citations omitted)); *cf. Livas v. Myers*, No. 2:20-CV-00422, 2020 WL 1939583, at *7-*8 (W.D. La. Apr. 22, 2020) ("Petitioners do not challenge their classification or initial placement at Oakdale, but still seek 'release' under § 2241 because of the extraordinary conditions caused by COVID-19." But "[n]either party nor this Court found a single precedential case in the Fifth Circuit interpreting [dicta from *Preiser v. Rodriquez*, 411 U.S. 475 (1973), *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)] and allowing conditions of confinement claims to be brought under § 2241.").

"The United States Supreme Court has not yet resolved the question of whether a conditions of confinement claim may be brought in the form of a petition for a writ of habeas corpus." *Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 170434, at *8 (W.D. Wash. Apr. 8, 2020) (citing *Bell*, 441 U.S. at 526 n.6 ("Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself.")); *see also Preiser*, 411 U.S. at 484, 499-500 ("[T]he essence of habeas corpus" whether under federal statute or common law "is an attack by a person in custody upon the

legality of that custody, and [ ] the traditional function of the writ is to secure release from illegal custody." "This is not to say that habeas corpus may not also be available to challenge" the conditions of prison life. "When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal. But we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983. That question is not before us." (citations omitted)).

And, addressing an individual detained by state authority, the United States Court of Appeals for the Fifth Circuit recently observed that

> [b]oth 28 U.S.C. § 2254 and 42 U.S.C. § 1983 offer relief to those improperly confined by the government. Which statutory vehicle to use depends on the nature of the claim and the type of relief requested, the instructive principle being that challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought under § 1983. While "fact or duration" claims must be brought under habeas, the Supreme Court has not foreclosed the use of habeas for other kinds of claims. Some circuit courts, however, have limited habeas corpus to claims that challenge the fact or duration of confinement. Others have not. Our own Circuit has been less clear, but we need not weigh in on that broader question today.

*Poree v. Collins*, 866 F.3d 235, 243-44 (5th Cir. 2017) (footnotes omitted); *compare id.* at 243-44 nn.26-28, *with Dawson*, 2020 WL 170434, at *8 (examining versions of the circuit split as to whether claims challenging conditions of confinement may be brought in a habeas petition); *see also Wilborn v. Mansukhani*, 795 F. Appx. 157, 163 (4th Cir. 2019) (per curiam) ("Since *Preiser*, a circuit split has deepened on this question. Seven of the ten circuits that have addressed the issue in a published decision have concluded that claims challenging the conditions of confinement cannot be brought in a habeas petition." (collecting cases, including *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998),

characterized as adopting the majority view)).

The Fifth Circuit has indeed labeled as "blurry" the distinction between a civil rights suit and a habeas action when a prisoner or detainee challenges "an unconstitutional condition of confinement or [ ] procedure that affects the *timing* of his release from custody." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (emphasis added). Of course, not all—indeed, not many—conditions of confinement can affect when (for example) a prisoner may be released from custody. These are generally limited to parole proceedings and the accumulation (or loss) of good time credits. And Fifth Circuit authority

> indicates that claims regarding denial of parole (and loss of good time credits) sound in habeas. We have explained that although a § 1983 suit can be used to challenge unconstitutional parole procedures, when a prisoner challenges the result of a specific defective parole hearing or the board's rules and procedures that affect his release, and resolution would automatically entitle him to accelerated release, then the challenge must be pursued in a habeas corpus proceeding.

*Davis*, 150 F.3d at 490 (citing *Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995); *In re Cain*, 137 F.3d 234 (5th Cir. 1998)); *see also Carson*, 112 F.3d at 820-21 ("If 'a favorable determination ... would not automatically entitle [the prisoner] to accelerated release,' the proper vehicle is a § 1983 suit." (quoting *Orellana*, 65 F.3d at 31)).

So the "simple, bright-line rule" adopted by the Fifth Circuit—that habeas is the proper vehicle where a favorable determination would result in accelerated release—is limited to a petitioner challenging a condition or procedure "that affects the timing of his release from custody." *Carson*, 112 F.3d at 820-21.

And, here, even if the Court were to find that a particular petitioner has proven that his right to due process under the Fifth Amendment has been violated by the conditions of his confinement,

-6-

that finding would not entitle him to accelerated release. *Cf. Lineberry v. United States*, 380 F. App'x 452, 453 (5th Cir. 2010) (per curiam) ("Lineberry has not provided any authority for his argument that he is entitled to be released because he has allegedly been subjected to cruel and unusual punishment. His challenges to the conditions of confinement, even if proved to be true, will not result in his accelerated release. *See Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990). The proper remedy is to require the discontinuance of a practice or to require the correction of an unconstitutional condition. *Id.* The district court correctly dismissed these claims without prejudice based on a determination that Lineberry must seek such remedies in a civil rights action. *Carson*, 112 F.3d at 820-21.")

In *Gomez*, the United States Court of Appeals for the Eleventh Circuit relied on *Cook v. Hanberry*, 596 F.2d 658 (5th Cir. 1979): "'Assuming arguendo that his allegations of mistreatment demonstrate cruel and unusual punishment, the petitioner still would not be entitled to release from prison. The appropriate remedy would be to enjoin continuance of any practices or require correction of any conditions causing him cruel and unusual punishment.'" *Gomez*, 899 F.2d at 1126 (quoting *Cook*, 596 F.2d at 660 (citations omitted)). And two district courts in that circuit recently relied on the *Gomez* rule (and the Fifth Circuit authority underlying it) in Section 2241 actions brought by immigration detainees requesting release from custody based on conditions-of-confinement claims. *See Gayle v. Meade*, No. 20-21553, 2020 WL 1949737, at *25 & n.13 (S.D. Fla. Apr. 22, 2020) ("The *Gomez* rule appears to be a minority view, and some parties undoubtedly view it as rigid or outdated. Nevertheless, it remains vital and the passage of time has not eroded it." That said, "[n]ot all circuits reject the *Gomez* rule. The Fifth Circuit Court of Appeals, for example, follows the Eleventh Circuit approach." (citations omitted)), *rec. adopted in part*, 2020 WL 2086482 (S.D. Fla.

Apr. 30, 2020); *see also Archilla v. Witte*, No. 4:20-cv-00596-RDP-JHE, 2020 WL 2513648, at *12-*16 (N.D. Ala. May 15, 2020).

The Court also observes that merely requesting, as relief, release from custody does not convert an action into one under the habeas statute. *See Archilla*, 2020 WL 2513648, at *12 (Petitioners "challenge the adequacy of the disease prevention measures at the ECDC15 and contend that, as individuals who are at increased risk of serious complications from COVID-19, ICE is unwilling or, perhaps more precisely, unable to address their medical needs and/or adopt safety measures to protect them from actual or potential exposure. So, properly understood, Petitioners present a classic conditions-of-confinement claim. Now, to be clear, the remedy they seek (release from custody) sounds in habeas. But tacking a traditional habeas remedy on to a prototypical conditions-of-confinement claim does not convert that classic civil rights claim into a habeas claim. So, the question is whether they can challenge their confinement conditions via a petition for a writ of habeas corpus."); *see also Springer v. Underwood*, No. 3:19-cv-1433-S-BN, 2019 WL 3307220, at *2 (N.D. Tex. June 28, 2019) ("Springer's allegations—that exposure to asbestos and mold while incarcerated violated the Eighth Amendment—must be pursued under *Bivens*. And his request for 'a reduction in [his] sentence due to the extended period of Eighth Amendment violations' does not convert his civil rights claims to habeas claims. *See Rios v. Commandant, U.S. Disciplinary Barracks*, 100 F. App'x 706, 708 (10th Cir. 2004) (per curiam) ('Here, Mr. Rios's allegations address the conditions of his confinement and thus should be raised in a civil rights action. Although in his prayer for relief Mr. Rios seeks a ten-day sentence credit for each day he has allegedly served improperly in maximum custody, he provides no support for his contention that he would be entitled to such relief if he prevailed on his substantive claims. ... In our view, a prisoner may not transform

a civil rights action involving the conditions of his confinement into a § 2241 petition merely by seeking sentencing relief in a manner not connected to his substantive claims.' ..."), *rec. accepted*, 2019 WL 3306130 (N.D. Tex. July 22, 2019), *appeal dismissed*, ___ F. App'x ____, No. 19-10977, 2020 WL 2787650 (5th Cir. May 28, 2020) (per curiam).

In sum, aside from conditions of confinement alleged to be unconstitutional that, if proved to be true, will result in accelerated release,

> habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose. While it is correctly alluded to as the Great Writ, it cannot be utilized as a base for the review of a refusal to grant collateral administrative relief or as a springboard to adjudicate matters foreign to the question of the legality of custody.

*Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976); *see also id.* at 937 (Goldberg, J., concurring) ("[H]abeas has its boundaries; the writ does not permit us to roam the judicial range in a farfetched effort to grant declaratory or injunctive relief unrelated to the question of custody.").

In filing this action, in addition to the habeas statute, Petitioners cited 28 U.S.C. §§ 1331 and 1361, *see* Dkt. No. 1, ¶ 1, and, on reply, Petitioners assert that

> [i]ndependent of its ability to grant habeas relief ... , this Court has the power to order their release. Petitioners have a well-recognized "right to sue directly under the constitution to enjoin . . . federal officials from violating [their] constitutional rights." And federal courts have a long history of granting prospective injunctive relief in such direct causes of action. Courts have specifically granted prospective injunctive relief in direct causes of action to prevent the violation of Fifth Amendment rights of detained immigrants. Because Petitioners seek prospective injunctive relief to prevent the continued violation of their Fifth Amendment rights, this Court has the power to grant that relief regardless of the success or failure of their habeas petitions.

Dkt. No. 22 at 17-18 (citations omitted).

But this Court agrees with the district court in *Sacal-Micha*: Petitioners' assertions "do not support recognition of [their] causes of action under the Fifth Amendment or in equity."

> "[T]he federal courts, and [the Fifth Circuit] in particular, have been hesitant to find causes of action arising directly from the Constitution." *Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980); *see also Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (quoting *Hearth, Inc.*, 617 F.2d at 382). Some exceptions exist, such as the establishment of a *Bivens* action. *Hearth, Inc.*, 617 F.2d at 382 (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) as one "notable exception" to the general rule). These exceptions were "necessitated primarily by the absence of alternative remedies." *Hearth, Inc.*, 617 F.2d at 382. Here, [Petitioners have] not demonstrated an absence of alternative remedies that would warrant recognizing his cause of action directly under the Fifth Amendment.

*Sacal-Micha*, 2020 WL 1815691, at *8.

In *Hearth*, the Fifth Circuit cited, as "notable exceptions" to the hesitancy "to find causes of action arising directly from the Constitution," *Bivens* and *Davis v. Passman*, 442 U.S. 228 (1979). *Hearth, Inc.*, 617 F.2d at 382. *Passman*, holding that a Congressman's administrative assistant may bring a gender discrimination suit under the Fifth Amendment Due Process Clause, extended *Bivens* to a new factual scenario—the second of only three times to date that the Supreme Court "has approved of an implied damages remedy under the Constitution itself," *Abbasi*, 137 S. Ct. at 1854-55; *cf. Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) ("In *Abbasi*, the Supreme Court further stressed that any extension of *Bivens* to new factual scenarios is now a disfavored judicial activity." (quoting 137 S. Ct. at 1857; internal quotation marks omitted)).

"The results in *Bivens* and *Passman* were necessitated primarily by the absence of alternative remedies. In each case, there simply was no other means of seeking redress for flagrant violations of the plaintiff's constitutional rights." *Hearth, Inc.*, 617 F.2d at 382. But, as Respondents pointed out during oral argument on June 4, here, Petitioners may challenge the conditions of their confinement

(but likely not request review of parole decisions) through an action under the Administrative Procedures Act ("APA").

"Section 702 of the APA waives the Government's sovereign immunity in certain circumstances. ... But judicial review under the APA is unavailable when other statutes 'preclude judicial review' or when 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a); *Texas v. United States*, 787 F.3d 733, 755 (5th Cir. 2015)." *Sacal-Micha v. Longoria*, ___ F. Supp. 3d ____, No. 1:20-CV-37, 2020 WL 1518861, at *6-*7(S.D. Tex. Mar. 27, 2020) (concluding that both limitations applied to a claim under the APA requesting that the court review the decision whether to grant parole to an ICE detainee); *compare id.*, *with Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 181 (D.D.C. 2013) ("Even assuming that BOP's decision was made under 18 U.S.C. § 3621, the Court is not reviewing the merits of BOP's decision as to *where* Royer is housed, but the constitutionality of the conditions of confinement it places on him regardless of where he is housed. Colorable constitutional claims are precluded from judicial review only where this has been made explicit by Congress. Here, Congress has precluded review of BOP 'determination[s], decision[s], or order[s]' as to a prisoner's place of imprisonment. However, Congress has not explicitly precluded review of *constitutional* claims based on these or similar decisions." (citing *Webster v. Doe*, 486 U.S. 592, 601, 603-04 (1988), noting that, "[t]here, the [Supreme] Court held that § 102(c) of the National Security Act precluded judicial review of the Director's employment termination decisions," but that the Supreme Court "held that the National Security Act did not preclude judicial review of constitutional challenges based on those same termination decisions")).

The Court therefore **DISMISSES** this consolidated case for lack of jurisdiction.

But, if the Court did have jurisdiction, the Court would nevertheless find that Petitioners have not shown that they are entitled to preliminary injunctive relief. Specifically, even if the Court could consider Petitioner's conditions claims under Section 2241, Petitioners have not shown that there is a substantial likelihood that he will prevail on the merits of their claims. The Court will focus on the Fifth Amendment due process claim.

> Immigration detainees are civil detainees, and thus, entitled to the same constitutional due process protections as pretrial detainees. *See Zadvydas v. Davis*, 533 U.S. 678, 688, (2001); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment."). Detention for noncriminal purposes is only allowed in narrow circumstances, "where a special justification ... outweighs the 'individual's constitutionally protected interest in avoiding physical restraint'" under the Fifth Amendment. *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). Detention as punishment for noncriminal purposes is not allowed. *See Bell*, 441 U.S. at 535. Where the government is holding the detainee in conditions that amount to punishment, and those conditions do not reasonably relate to a "legitimate, non-punitive governmental objective," such conditions violate the detainee's due process rights. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020).

*Vazquez Barrera*, 2020 WL 1904497, at *5 (citation modified).

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644-45 (5th Cir. 1996) (en banc)); *accord Cadena*, 946 F.3d at 727. Petitioners' claims here are best understood under the first theory. *Cf. Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (noting that the Fifth Circuit "has explained that challenges to … sanitary conditions … are generally considered challenges to the conditions of confinement" (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc))).

> If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because, ... intent may be inferred from the decision to expose a detainee to an unconstitutional condition. A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc. In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."

*Shepherd*, 591 F.3d at 452 (citing *Scott*, 114 F.3d at 53 n.2, then quoting *Hare*, 74 F.3d at 645).

"Proving a pattern is a heavy burden, one that has rarely been met in our caselaw," and, "to constitute impermissible punishment, the condition must be one that is 'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'" *Id.* (quoting Bell, 441 U.S. at 539); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473-74 (2015) ("[A]s *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." (citations omitted)).

As numerous federal courts have recognized, "the COVID-19 pandemic presents an extraordinary and unique public-health risk to society, as evidenced by the unprecedented protective measures that local, state, and national governmental authorities have implemented to stem the spread of the virus." *E.g., Sacal-Micha*, 2020 WL 1518861, at *6. But, simply put, after considering the record here and with the benefit of oral argument, Petitioners have not shown that the Respondents' response to the pandemic is, objectively speaking, "not rationally related to a legitimate governmental objective." *Kingsley*, 135 S. Ct. at 2473-74. That is, they have failed to show that Prairieland's implementation of CDC or other guidance (or its failure to implement further measures that Petitioners argue are needed) is "unreasonable in light of the COVID-19 pandemic." *Bodnar v.*

*Lake Cnty. Jail*, No. 2:20-CV-157-PPS-APR, 2020 WL 1940742, at *3 (S.D. Ind. Apr. 22, 2020) ("The conditions and restrictions that he has described are 'rationally related to a legitimate nonpunitive governmental purpose' and are not 'excessive in relation to that purpose.'" (quoting *Kingsley*, 135 S. Ct. at 2473)); *see also C.T.M. v. Moore*, No. 3:20-cv-540-B-BT, Dkt. No. 60 (N.D. Tex. June 1, 2020) (examining the conditions claims made by another detainee at Prairieland, finding that "C.T.M. fails to establish that her detention amounts to punishment in violation of her Fifth Amendment rights"); *cf. Maney v. Brown*, No. 6:20-cv-00570-SB, 2020 WL 2839423, at *13- (D. Or. June 1, 2020) (examining the Oregon Department of Corrections's response to COVID-19 in an action under Section 1983 and denying a preliminary injunction in part because plaintiffs failed to show a likelihood of success on the merits: "In sum, the Court finds that to date, Defendants have responded reasonably to the serious risks posed by the COVID-19 pandemic, and Plaintiffs are therefore unlikely to succeed in demonstrating that Defendants acted with deliberate indifference." (citations omitted)).

**SO ORDERED.**

**DATED: JUNE 6, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE